W. D. Ambrose, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Elizabeth Anne Ambrose, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 95744, 95745. Promulgated November 29, 1940.

*George S. Atkinson, Esq.*, and *Douglas M. Brooks, C. P. A.*, for the petitioners.

*D. D. Smith, Esq.*, for the respondent.

1406

OPINION.

Turner: The petitioners contend that under Regulations 86, article 23 (m)—16,[1] they are entitled to deduct from gross income the intangible drilling and development costs of the four wells drilled in 1934. The respondent contends that the contracts under which the wells were drilled were "turnkey" contracts and that such costs should be capitalized. On brief, the parties seem to center their argument around the question of whether the four contracts are or are not "turnkey" contracts.

A "turnkey" contract is generally understood as one which requires the drilling contractor to furnish all the material and equipment and to turn over a completed well for a stipulated price. The contracts in question do not conform with that definition in any respect. Here the contracts were entered into by the parties on what is commonly known as a "cost-plus" basis. The petitioners agreed to pay the cost of drilling the wells, including materials and labor, plus a bonus to the drilling company. The amount of the bonus was to be determined on the basis of the cost of materials and labor and neither the cost nor the amount of the bonus could be ascertained until the wells were completed. Obviously these contracts are not "turnkey" contracts.

The above disposition of that question is only preliminary, however, and it does not necessarily follow that the petitioners are entitled to the deduction. In *Retsal Drilling Co.*, 42 B. T. A. 1057, we said that "If any part of the amount expended for drilling, equipping,

---

[1] ART. 23 (m)–16. *Charges to capital and to expense in the case of oil and gas wells.*— (*a*) Items chargeable to capital or to expense at taxpayer's option:

(1) Option with respect to intangible drilling and development costs in general: All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs. * * * Drilling and development costs shall not be excepted from the option merely because they are incurred under a contract providing for the drilling of a well to an agreed depth, or depths, at an agreed price per foot or other unit of measurement.

and completing an oil well is to be deducted, it must meet the test of the statute and regulation, and it is not enough to say that such expenditures are deductible because the contract under which they were made is not, strictly speaking, a turnkey contract." In that case the taxpayer did not hire labor or buy materials and supplies, but agreed to pay an independent contractor a stated sum for a finished job, leaving it to the contractor to make his own deal for the material, equipment, and labor. In disallowing the deduction, we pointed out that the relationship between the parties was not that of employer and employee but that of independent contractor.

On this point in the present case the respondent argues that the petitioners are not entitled to the deductions because they "made no expenditures" for intangible drilling and development costs. He contends that these expenditures were made by the Ross Drilling Co. While it is true that the contracts provided that the Ross Drilling Co. would "furnish" all machinery, tools, pipe, tubing, materials, and labor of every kind necessary for the drilling of the well, the remaining provisions of the contracts clearly show that the real arrangement was that the materials and labor, which included the intangible drilling costs, were to be procured by the Ross Drilling Co. for the petitioners, subject to their approval, and were to be paid for by them. According to the contracts, the company agreed to use casing, tubing, and connections "approved by and acceptable" to the petitioners; that if the "materials" brought to the location should "not be satisfactory" to the petitioners, the company would replace same with materials which would meet the approval of the petitioners; that the contracts were entered into on a "cost-plus" basis; and that when the wells were completed, the petitioners would "be indebted" to the company for the "cost of drilling" the wells and its profit, said cost to be the amount shown by a statement furnished by the company, accompanied by supporting invoices showing all charges appearing in said statement. The company, acting as agent for the petitioners, kept their books and records and when any expenditures were made for materials and labor such items were charged to petitioners' account. From time to time the petitioners inspected these records, also the materials, invoices, payrolls, etc., and when the wells were completed they paid the cost of each and every such item, plus a bonus to the drilling company.

We think these contracts are more in the nature of contracts of employment rather than that of an independent contractor. It seems unnecessary to point out all the differences between a contract entered into on a "cost-plus" basis and one on an independent contractor basis. It will suffice here to point out that the petitioners, in effect, employed the partnership to supervise the drilling of wells for them

on their oil properties, agreeing to pay the costs thereof plus a bonus to the partnership for services rendered. We think those facts meet the test of the respondent's regulation and we hold that petitioners are entitled to the deductions claimed.

*Decisions will be entered under Rule 50.*